### D. E. BARKLEY v. ATLANTIC COAST REALTY COMPANY.

(Filed 15 December, 1915.)

**1. Contracts—Sale of Land—Principal and Agent—Guarantee of Agent—Liens.**

In a contract made for the platting of land in a town into lots and boosting the sale with a brass band, advertising and other methods, specifying how the expenses were to be proportioned between the parties, the defendant, whose business it was to make sales of this character, by express provision of article 3 of the contract, agreed to pay the plaintiff $8,000 on the day of the sale and half the amount the property would bring beyond that sum, and was to receive $300 as expenses, to be deducted from his part of the profits: *Held*, the payment of the $8,000 was a guarantee on defendant's part to which it was obligated, and the trial judge correctly directed its payment, and interest, into court, to be applied, in this case, by the clerk to the discharge of all liens on the land, and the balance to the plaintiff on his tendering to defendant an indefeasible deed to the property.

**2. Contracts, Duplicated—Change in Copy—Original Contract.**

Where the remainderman contracts that the lands shall be sold upon a contingent profit by another acting as sales agent, which was executed in duplicate, and he afterwards has the life tenants to sign his copy so as to bind them to the agreement, it is held that the alteration of this copy in the respect stated did not affect the original agreement as stated in the copy of the other contracting party; and further, that it was in furtherance of his interest and not prejudicial to it.

**3. Contracts—Reformation—Evidence.**

In this action to reform a written contract for mutual mistake, the verdict of the jury establishing the contract as written is held to be supported by the evidence.

APPEAL by defendant from *Daniels, J.,* at February Term, 1915, of FRANKLIN.

*Bickett, White & Malone for plaintiff.*
*W. H. Yarborough, B. T. Holden and Manning & Kitchin for defendant.*

CLARK, C. J.   The contract sued on recites "that for and in consideration of the sum of $1, paid to the party of the second part by the party of the first part, and for further considerations mentioned, the party of the second part does agree to offer for sale for the party of the first part on 11 May, 1914, a certain plat of dwellings and lots located in the town of Franklinton, in the county of Franklin, in the State of North Carolina, containing about 270 x 210 feet and 150 x 250 feet adjoining main property on the south, more or less, of various sizes, on the following terms and conditions." The first was that the party of the second part would, at its own expense, grade and diagram the property, and, on the day of sale, furnish a band of music and all the

31—170

prizes that would be given. 2. The party of the second part agreed to advertise lots through newspapers, by handbills, personal letters, etc., to furnish auctioneers to cry the bids, markers to show the size of the lots, experienced ground men to mingle among the crowd to boost the sale, bookkeeper to keep the account of the sales, and other necessary help. Further, the party of the second part agreed to do everything in its power to cause each and every lot sold "to bring the last and highest dollar," and, after the sale, to attend to the collection of the first payment from the purchasers, to secure signed notes for the deferred payments, prepare all deeds, and so forth, and, further, that if the weather should be so rainy or bad as to make a postponement of the sale advisable, another day would be named, and the party of the second part would readvertise and make the sale.

While the transaction with the defendant was for the purpose of making sale of the property in the customary manner, and not a contract of the defendant to purchase the property outright, the defendant, in the third article of agreement, stipulated as follows: "3. The party of the second part agrees to pay to the party of the first part eight thousand dollars ($8,000) in cash on day of sale (11 May, 1914), and one-half of all over $8,000 that said property may bring. The party of the first part agrees to pay to the party of the second part $300 as expenses, the amount to be deducted from the party of the first part's average on said property. The parties to this contract agreed to divide the discount allowed purchasers for cash payment on day of sale."

It appears from the evidence that a printed form of the realty company was used, which was closely followed except that printed paragraphs 3 and 4 were struck out, and the above clause 3 was inserted.

The construction of a contract, when in writing or agreed upon, is a matter of law for the courts, and, besides, in this case it was agreed as follows: "Only the second issue shall be submitted to the jury, this being the only one about which the facts are in dispute, and the judge shall answer the other issues as conclusions of law." The court properly held that the above third article was a guarantee on the part of the defendant that it would pay the plaintiff the sum of $8,000 in cash on the day of the sale. The contract further specified, as above stated, in regard to the division of expenses and of receipts over and above said $8,000.

The second issues was: "Was the contract sued upon signed by mutual mistake of the parties, as alleged in the answer?" To which the jury responded, "No." The facts in regard to the alleged alteration were that some ten days after the execution of the contract, without the consent or knowledge of the defendant, the plaintiff had the names of Mary P. Clegg and E. B. Clegg put in the contract and caused them to sign it before a notary. The Cleggs owned a life estate in the property.

This addition was made only in the copy held by the plaintiffs and not in the defendant's copy, and could in no wise prejudice them. It was only an additional assurance given by the plaintiff for the benefit and satisfaction of purchasers. Even a material alteration in a duplicate original does not vitiate the contract. 2 Cyc., 224; *Jones v. Hoard* (Ark.), 43 Am. St., 17.

As to the main controversy, as to the liability and the nature of the contract, it was in evidence that H. M. White, the treasurer of the defendant company, stated to Mr. Bickett over the phone, in reply to a question whether the defendant had accepted the contract, "Yes; I wrote you last night that we have accepted your contract to pay you $8,000 on the day of the sale, and I wrote you to that effect last night, and you will no doubt get the letter today." The letter to that effect was received and put in evidence.

There was evidence in support of the plaintiff's contention as to the second issue, and the other issues were matters of law and correctly answered by the judge. The judgment directs that the $8,000 and interest shall be paid into court and applied by the clerk to the discharge of all liens on property, and the balance paid to the plaintiff on tender of an indefeasible deed to the property to defendants.

No error.