[Civ. No. 2709. Fourth Appellate District.—November 18, 1940.]

C. M. BARR, Respondent, v. DOROTHY LOUISE FERRIS et al., as Executors, etc., Appellants.

Arthur F. H. Wright for Appellants.

Gray, Cary, Ames & Driscoll and John M. Cranston for Respondent.

BARNARD, P. J.—In this action the plaintiff sought to have it adjudged that he is the owner and entitled to possession of all property held by his wife at the time of her death.

The plaintiff and Virginia K. Barr were married in 1905 and lived in Pittsburgh, Pa., until September, 1929, when they separated. They then agreed upon a property settlement and Mrs. Barr signed and acknowledged a writing which is dated September 24, 1929. In this instrument, parts of which are in the usual language of a quitclaim deed, she acknowledges receipt of $1,000 and certain bonds with a par value of $35,000, in full satisfaction and payment of all sums due or to become due to her from the plaintiff or his estate, subject, however, to the further payment to her of $15,000 on or before January 1, 1930, ''receipt whereof is to be acknowledged on a separate paper, but which is to be made part of this release.'' The instrument then provides that she releases, quitclaims and discharges the plaintiff from any further payments to her and that she releases and quitclaims any and all dower rights which she has or may have in his property or in his estate. Following that is this provision: *"Should I die before C. M. Barr all property in my possession, real, personal and mixed, shall be returned to C. M. Barr."*

Mrs. Barr signed and acknowledged this instrument on September 27, 1929, after which it was delivered to the plaintiff. Shortly thereafter Mrs. Barr came to California and the cash and bonds listed in the instrument were sent to her here by a trust company, with whom they had been deposited by Mr. Barr for that purpose. Early in December, 1929, the plaintiff sent Mrs. Barr the $15,000 which remained to be paid, with a receipt therefor and a carbon copy of that receipt. After signing these Mrs. Barr placed one of them in her lock box and sent the other to the plaintiff. Mrs. Barr remained in California until she died in 1937, leaving a will in which all of her property was left to persons other than the plaintiff and in which the defendants were named as executors and residuary legatees.

Among other things, the court found that at the time of their separation the plaintiff and his wife entered into an agreement respecting their property rights, which agreement was evidenced by and embodied in the instrument dated

September 24, 1929; that by the terms of this agreement and as a part thereof Mrs. Barr covenanted and agreed with plaintiff that if she should die first all property in her possession should belong to and be returned to him; that the receipt for the remaining $15,000 later given by Mrs. Barr did not modify or form any part of this agreement except in so far as said receipt evidenced the payment of that sum; that it is not true that the portion of the agreement which we have italicized was added thereto without the knowledge or consent of the plaintiff or without the knowledge or consent of Mrs. Barr; that said words were a portion of said agreement at the time of its execution; and that there was consideration for the agreement and for each and every portion thereof. Judgment was entered decreeing that the plaintiff was entitled to recover all of the property which was in the possession of Mrs. Barr at the time of her death and which is now in the possession of the defendants, and that the same be turned over to him. From this judgment the defendants have appealed.

Appellants' first question is thus stated by them: "Is plaintiff's evidence not so incredible and improbable as to deny belief?" It is contended that the portion of the instrument which we have italicized was not contained therein at the time the instrument was signed and acknowledged by Mrs. Barr on September 27, 1929. However, no evidence is cited to support this contention other than to point out that the typist who typed this document was at the time the respondent's secretary, that the notary who took Mrs. Barr's acknowledgment was an employee of the bank with which the respondent did business and was well acquainted with him, and to refer to certain evidence to the effect that the respondent altered the duplicate receipt for $15,000 which Mrs. Barr sent to him in December, 1929. It is argued that these circumstances constitute "a bewildering array of suspicions as to the genuineness of plaintiff's claim."

 Beyond question the evidence supports the court's findings to the effect that this instrument contained the clause which we have italicized at the time it was signed and acknowledged by Mrs. Barr. The typist testified that the instrument, with the exception of the clause in question, was dictated to her by the respondent and that she then typed the same; that several days later Mrs. Barr came in and she ac-

companied her to the office of the notary; that after they arrived there Mrs. Barr requested her to add the italicized clause to the agreement; that she did this on the notary's typewriter before the instrument was signed; that Mrs. Barr then signed it and she signed as a witness; that thereafter the notary put on the acknowledgment certificate; that when she went back she handed the instrument to Mr. Barr; and that she did not know whether or not Mr. Barr knew that this insertion was going to be made but that she called it to his attention when she returned. The notary testified that Mrs. Barr and the typist came to his office; that Mrs. Barr was reading this document and stated in his presence that she wanted to make a "correction" and asked if the typist could use his typewriter; that the italicized clause was added to the document before it was signed; that Mrs. Barr signed first and the typist then signed as a witness; and that, thereafter, he placed on the document a certificate of acknowledgment. This evidence supports the court's finding as to the contents of the document at the time it was signed, and is unaffected by any question or suspicion arising in connection with the claimed alteration of one copy of the receipt for $15,000 which Mrs. Barr later signed.

■ Appellants' next contention is that the evidence shows that the respondent altered the copy of the receipt for $15,000 which Mrs. Barr later sent to him, and that this was a material alteration which voided any rights the respondent may have had under the original agreement. After signing both copies of this receipt Mrs. Barr sent one copy to the respondent and placed the other in her safety deposit box where it was found after her death. It is admitted that in both copies the blanks of a printed form were filled out in the handwriting of the respondent to the extent of acknowledging the receipt of $15,000. While both copies were signed by Mrs. Barr, the one retained by her had upon it, in her handwriting, these additional words: "$24,900 being the personal property of V. K. Barr prior to September 24, 1929." The other copy, which was sent to the respondent, is very much blurred and contains, in the handwriting of the respondent, the following words: "filed herewith and made part of the original receipt making total of $51,000 bonds and cash—all of which are and are to remain the property of C. M. Barr." There is evidence that at the time Mrs.

Barr signed the two copies of this receipt she wrote upon each the above quoted words which now appear only on the copy she retained. There is also evidence that at that time the additional words now appearing on the respondent's copy of this receipt, to which we have referred, were not upon either copy thereof. It is argued that the only reasonable inference is that the respondent erased from his copy the words placed thereon by his wife and in lieu thereof wrote thereon the other words above quoted. It is further argued that this alteration of the receipt for $15,000 was a material alteration of the agreement dated September 24, 1929, since the latter instrument, in providing for the subsequent payment of $15,000, provides that receipt thereof "is to be acknowledged on a separate paper, but which is to be made part of this release", and it follows, under the provisions of section 1700 of the Civil Code, that this alteration has extinguished the original contract.

While the respondent's explanation of the blurred condition of his copy of the receipt for $15,000 is unsatisfactory in the extreme, he testified that he added nothing to that copy which was not thereon when it was returned to him by Mrs. Barr. In any event, the most that appears is that after the respondent prepared this receipt in duplicate his wife added a statement to the effect that a portion of the money and property delivered to her had been her personal property, and that, thereafter, the respondent changed his copy by erasing what she had written and inserting a statement to the effect that the $51,000 bonds and cash which he had turned over to her "are and are to remain the property of C. M. Barr". He did not alter any portion of the receipt which was required or contemplated by the original agreement dated September 24, 1929. Nothing that either of these parties could write upon the respective copies of the receipt could, without the consent of the other, alter or change the provisions of the original contract, the terms of which had then been fully complied with by the respondent. No contention is made that the $15,000 was not paid by the respondent and the court correctly held that this receipt did not modify or form any part of the original agreement except as it evidenced the final payment of $15,000 which was required thereby. Not only was any possible alteration of this copy of the receipt not a material alteration of the original

contract, but section 1701 of the Civil Code provides that where a contract is executed in duplicate an alteration of one copy while the other exists is not within the provisions of the preceding section. It appears, without conflict, that this receipt for $15,000 was executed in duplicate and that one copy which had never been in the hands of the respondent still existed and was produced at the trial.

It is next urged that there was no mutual consent between the respondent and Mrs. Barr with respect to the addition of the clause which we have italicized to the original agreement, and that there was no consideration whatever for that portion of that agreement. The addition of the clause in question was not an amendment to the original agreement, as contended by appellants, but the same was added to the instrument before it was executed. While there is no evidence before us of the preliminary negotiations of these parties the only reasonable inference is that they had arrived at some sort of an agreement, with respect to a property settlement, before the respondent called up the notary and arranged for the taking of Mrs. Barr's acknowledgment. There is no evidence that the matter which Mrs. Barr asked to have inserted in the instrument before she signed it was not a provision upon which the parties had theretofore agreed. However that may be, Mrs. Barr asked to have this clause inserted in the instrument before she would sign it, and referred to it as a "correction". The instrument was immediately delivered to the respondent, his attention was called to the insertion, and he retained the writing and acted upon it. Thereafter, bonds and cash to the amount of $36,000 which respondent had placed with a trust company for that purpose, were forwarded to Mrs. Barr in California and a few months later, in further and complete compliance with his duty under the instrument, the respondent paid Mrs. Barr the remaining $15,000. A mutual consent sufficiently appears and the court's findings to the effect that there was a good consideration for the execution of the agreement and for each and every portion thereof, and that the clause in question was added with the knowledge and consent of both parties, are sustained by the evidence.

Appellants' final contention is that these words which were thus added to this instrument are not sufficient to constitute a deed, that they constitute only a promise to make a

gift, and that the entire instrument is merely a void attempt to make a will. The respondent argues that the judgment may be sustained either on the theory that the language of the instrument is sufficient to give him an immediate interest in the property, although the right of possession is deferred until the death of Mrs. Barr, or on the theory that the instrument is a valid and legally binding contract to make a will. In some respects the situation here existing is somewhat similar to that found in some of the cases in which the instrument in question has been held sufficient to constitute a deed, and given that effect. (*Hughes* v. *Scott*, 47 Cal. App. 264 [190 Pac. 643] ; *Jacobs* v. *All Persons*, 12 Cal. App. 163 [106 Pac. 896] ; *Burnett* v. *Piercy*, 149 Cal. 178 [86 Pac. 603].) We think, however, that the court correctly interpreted this instrument as an agreement whereby Mrs. Barr agreed to return all property in her possession to the respondent in the event she died first. The agreement and all parts thereof were founded upon an adequate consideration and it is not even suggested that the respondent has not fully complied with his part thereof. Mrs. Barr having accepted the consideration paid and delivered in reliance upon the agreement, her representatives should be estopped to deny the binding effect of that part of the agreement which was to be performed by her. ■ The property was not to be returned until the death of Mrs. Barr and the only practicable way for her to return it at that precise time would be by making a will to that effect. We think the agreement should be interpreted as one to make a will, giving to the respondent such property as Mrs. Barr possessed at her death. This case, therefore, falls within the rules laid down in *Davis* v. *Jacoby*, 1 Cal. (2d) 370 [34 Pac. (2d) 1026], *Keefe* v. *Keefe*, 19 Cal. App. 310 [125 Pac. 929], and *Wolfe* v. *Donahue*, 206 Cal. 213 [273 Pac. 547].

Some suggestion is made in appellants' reply brief that the respondent might have brought a different form of action, but no argument is presented which attacks the form of the action as actually brought. The agreement, as made, contemplated that Mrs. Barr might convert some of the property turned over to her into real estate and the agreement provides that in case she died first all property in her possession, real, personal and mixed, should be returned to the respondent. As a matter of fact, as shown by the judgment,

the property left by Mrs. Barr, and which was in the possession of the defendants as executors of her will, included some real estate located in San Diego. In legal effect this action was one to impress a trust upon the property in question, and the effect of the judgment is to uphold such a trust and to order the property delivered to the respondent. Since this point has not been definitely raised it would serve no useful purpose to analyze the authorities which support this procedure and this result. (See *Trower* v. *Young*, 40 Cal. App. (2d) 539 [105 Pac. (2d) 160], and cases there cited.)

For the reasons given the judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 16, 1941.