FRANK JENKINS, APPELLANT, v. WATSON-WILSON
TRANSPORTATION SYSTEM, INC., APPELLEE.

163 N. W. 2d 123

Filed December 13, 1968. No. 36941.

Robert C. Vondrasek, for appellant.

William E. Morrow, Jr., and Swarr, May, Royce, Smith, Andersen & Ross, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and KOKJER and ACH, District Judges.

SPENCER, J.

This is an action for an accounting. Plaintiff claims additional compensation due him under a written contract between the parties. Defendant counterclaimed for excess advances made on behalf of plaintiff. Judgment was rendered for the defendant on its counterclaim for $2,583.23, and plaintiff has perfected an appeal to this court.

Plaintiff, a truck driver and the owner of truck-tractors and trailers, entered into an agreement with defendant, a common carrier, for the transportation of freight, pursuant to the terms of a written contract. The contract required plaintiff to furnish a complete unit, consisting of a tractor and a trailer, employees for the unit,

and to pay all fuel tax payments, road taxes, equipment use fees or taxes, equipment license fees, driver's license fees, and other fees assessed on the equipment used by him in the performance of the contract. The agreement provided that defendant could pay the taxes and fees, and charge plaintiff with those applicable to his equipment.

Plaintiff made several hundred trips under the contract. The only issue involved herein is whether or not 28 trips performed on a certain government contract held by defendant were included within the terms of the written contract between the parties. These trips were made between August 1965, and November 1966, and involved the hauling of missiles or high-explosive radioactive materials. The trips required a special trailer which plaintiff was unable to furnish. The only portion of plaintiff's equipment used on these 28 hauls was a tractor. A trailer provided by the defendant was either one of its own or one belonging to the government.

The first time defendant was aware plaintiff was claiming additional money on the 28 hauls was the latter part of March 1967. Defendant had paid the amount it believed to be due after the hauls. Plaintiff was permitted by defendant to cancel the contract on March 28, 1967. For hauls made pursuant to the contract plaintiff was to receive a certain percentage of the revenue paid to the carrier on the hauls. On all of the regular hauls the plaintiff was furnished a bill of lading which indicated the amount of revenue being paid to defendant carrier. There were no bills of lading on any of the 28 trips in question. Defendant paid plaintiff on a per-loaded mile rate on each of these trips. Plaintiff made no effort to ascertain the amount of revenue received by defendant until the termination of the written contract. Plaintiff claims he was underpaid $14,390.43 on the 28 hauls.

Plaintiff premises his action on the rule that parol evidence is inadmissible to vary a written agreement complete on its face. Seminole Bond & Mtg. Co. v. Investors

Realty Co., 127 Neb. 193, 254 N. W. 732. The parol evidence rule relates to parol agreements made prior to or contemporaneous with a written agreement. It does not apply to parol agreements made after a written agreement, which is the situation here.

As we said in Andrews v. Wilke, 181 Neb. 398, 148 N. W. 2d 924: "The terms of a written executory contract may be changed by a subsequent parol agreement before a breach thereof."

Plaintiff concedes that his equipment was inadequate for the 28 trips which are in question here. It is undisputed that a special trailer had to be provided for his tractors to make the hauls. The evidence is also undisputed that there was conversation about these trips previous to the first one. Plaintiff contends no agreement was reached. He characterized the discussions as merely talk around the office, and stated that he never knowingly agreed to accept any compensation other than that provided in the contract. Defendant's office manager for the special products division testified that before the first trip he and the plaintiff agreed on $1 a mile. When the mileage was figured, it was 1,840 miles, and plaintiff agreed to accept $1,800 for the trip. Defendant's witnesses testified to other conversations with the plaintiff, which he denied. His testimony on cross-examination is as follows: "Q. Did you ever sit down at a desk with Mr. Reinhardt and discuss how much pay you were going to get for one of those trips? A. We talked of it, yes. Q. Where did that discussion take place? A. In Mr. Reinhardt's office. * * * Q. What was the discussion about the $925 one way? A. He said that is what he was going to pay me. Q. What did you say? A. Well, I was working for the guy, what could I say? Q. What did you say? A. Evidently I said all right, but at the time I had no idea what they were—the revenue on the loads, either. Q. But you did know that you were not furnishing a trailer? A. Yes, sir."

While the trips were hazardous, plaintiff was paid at

least double the prevailing rate. He accepted the payments made on the 28 trips over a period of 15 months. He made no complaint he was underpaid on any of the trips until more than 4 months after the last trip was made. This was the week he terminated his contract with the defendant. The trial court observed the witnesses and concluded that the 28 trips were not included within the terms of the written contract, but were handled pursuant to oral agreements. We see no reason to determine otherwise. Where there is irreconcilable conflict on a material issue this court will, in determining the weight of evidence of the witnesses who appear in court to testify, consider the fact that the trial court observed them and their manner of testifying and must have accepted one version of the facts rather than the other. Hooper v. City of Lincoln, *ante* p. 591, 163 N. W. 2d 117.

Defendant, pursuant to the written contract, purchased licenses for and paid taxes on plaintiff's equipment for the 1967 license year. Plaintiff terminated the agreement March 28, 1967. Defendant transferred as many of the licenses as it could use to other equipment and prorated the cost of the licenses transferred. Plaintiff does not dispute the amount of the charges, but urges that he only had the use of the balance of the licenses for one quarter of the year, and that he is being charged for the full license year. Defendant transferred as many of the licenses as it could use, and the ones for which plaintiff was charged could not be returned or used. The trial court properly charged plaintiff with these fees under the written contract between the parties.

For the reasons stated above, the judgment herein should be and hereby is affirmed.

AFFIRMED.