454 So.2d 730 (1984)
James William PEACOCK, Jr., and Mary Patricia Peacock, His Wife, and Bill Peacock Leasing and Rentals, Inc.,[*] Appellants,
v.
FARMERS AND MERCHANTS BANK, a Florida Banking Corporation, Appellee.
No. AU-492.
District Court of Appeal of Florida, First District.
August 17, 1984.
Rehearing Denied September 17, 1984.
*732 Mallory E. Horne and William L. Grossenbacher, of Horne, Rhodes, Jaffrey & Horne, Tallahassee, for appellants.
T. Buckingham Bird, Monticello, for appellee.
SMITH, Judge.
Appellants, James William Peacock, Jr., and Mary Patricia Peacock, his wife, appeal from a final judgment of foreclosure on real property mortgaged as security for two loans secured from the appellee bank. Appellants raise three grounds for this appeal, two of which relate to collateral proceedings involving the sale in bankruptcy of certain corporate property owned by Bill Peacock Chevrolet, Inc., which also had been included as collateral in the mortgage securing the two loans. The gist of appellants' contentions is that because of various actions or inactions by the bank, appellants' liability as guarantors or mortgagors of their own individual properties should be discharged. Finding no merit to any of these grounds, we affirm.
The appellee bank ("bank") provided appellant Bill Peacock Chevrolet, Inc. ("Peacock, Inc.") with a $150,000 loan in mid-April 1977. This loan was signed by appellants James William Peacock, Jr., and Mary Patricia Peacock (president and sole stockholder, and secretary-treasurer, respectively, of Peacock, Inc.) both as officers of the corporation and as personal guarantors. The note was secured by two parcels of real property, an office building and a 23-acre tract of land owned by Peacock, Inc., located in Monticello, Florida. Additionally, appellants as guarantors mortgaged a parcel of real property located in Gadsden County, Florida, as well as their family residence located in Tallahassee, Florida. The mortgage provided a future advance clause, and Peacock, Inc., obtained an additional $50,000 loan in August 1979. This note was secured by the 1977 mortgage, with appellants cosigning this note. Since the Peacocks had deeded their 80-acre Gadsden County lands to Bill Peacock Leasing and Rentals, Inc., in June 1978, this corporation signed as a co-maker on the $50,000 note. Appellant James William Peacock, Jr., is the president and sole stockholder of Bill Peacock Leasing and Rentals, Inc., and Mary Patricia Peacock is the secretary-treasurer of this corporation, which is now defunct.
In January 1980, Peacock, Inc., filed for bankruptcy pursuant to Title 11, United States Code, was subsequently adjudged to be in bankruptcy in August 1980, and a trustee was appointed to take charge of and dispose of all its property. In its order adjudging Peacock, Inc., to be bankrupt, the bankruptcy court, pursuant to Title 11, Section 363, United States Code, issued a stay order preventing secured creditors from selling any of the bankrupt's assets. In September 1980, the bank, as a secured creditor, filed suit in the bankruptcy court seeking to set aside that court's stay. In response to the bank's suit, the trustee filed suit seeking permission to sell the corporate assets of Peacock, Inc., free and clear of creditors and further seeking marshaling of the appellants' personal assets pledged as collateral. The bankruptcy court ruled against the bank, ordering that the trustee would be allowed to sell the corporate assets and that marshaling of the appellants' personal assets would be allowed.[1] Subsequently, the trustee sold the *733 corporate assets of Peacock, Inc., for a total sales price of $111,000, of which the bank received $82,000, the sales proceeds after the trustee paid off the first mortgage holders on the Monticello parcel of land, as well as fees and costs. Appellants appealed the bankruptcy court's order to the extent that it allowed marshaling as to their personal assets, but did not appeal the order authorizing the trustee to sell the corporate assets; nor did appellants raise any issue on appeal concerning the sales price actually received for the 23-acre Monticello tract, which had been sold prior to the filing of appellants' appeal. Appellants also failed to object to the sales price of the second corporate asset, the office building owned by Peacock, Inc.[2]
Subsequent to the appellants' appeal of the bankruptcy court's order, the appellee bank filed a foreclosure action in the circuit court against the remaining property covered by its mortgage, appellants' Tallahassee residence, and the real property located in Gadsden County. It is the trial court's judgment of foreclosure on these properties that appellants appeal to this court.
Turning to the issues, we note first appellants' contention that the bank acquiesced in the sale by the trustee of the corporate assets located in Monticello for a price significantly less than their actual value. Appellants offered the testimony of an appraiser suggesting that these properties, sold by the trustee for $111,000, had a combined value of approximately $500,000. Moreover, appellee's own appraisal expert gauged the value of the property at approximately $126,000. Appellants urge that the bank, even though it filed suit to allow it to sell the corporate assets, did not exercise sufficient diligence in pursuing this remedy. As a result, appellants contend that the bank's collateral, as represented by the corporate assets, has been impaired to the extent that the sales price of the assets was less than their appraised value. Secondly, appellants contend that the appellee bank materially altered the two notes upon which their obligations to the bank were based. Finally, appellants argue that the bank's acquiescence in the sale of the corporate assets by the trustee destroyed the appellants' equitable right to redemption of the mortgages embodied in the notes. Appellants maintain that all three grounds noted above entitle them to discharge from their obligations as guarantors, thus entitling them to reversal of the judgment of foreclosure on their Tallahassee residence and the Gadsden County real property. We are persuaded by none of these arguments.
Appellants' impairment of collateral claim is based on Section 673.606, Florida Statutes, which provides:
(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder... .
* * * * * *
(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
This statutory provision is based on a like provision found in the Uniform Commercial Code, Section 3-606(1)(b), which is said to embody the principle of the law of suretyship that a release of collateral held by a creditor, or its impairment by improper action or inaction on his part, will extinguish the obligation of the surety, at least to the extent of the value of the security released or impaired. 11 Am.Jur.2d, Bills and Notes, § 957, cited in Annotation, 95 ALR 3d 962 (1979). In raising this defense, the appellants have the burden of proving that an unjustified impairment of collateral has occurred, and the extent of the impairment. Lyons v. Citizen's Commercial Bank, 443 So.2d 229, *734 232 (Fla. 1st DCA 1983). An unjustifiable impairment of collateral may be shown to have resulted from negligent action or inaction on the part of the holders of the instruments whose collateral was impaired.[3] Our review of the record convinces us that the requisite showing has not been made here.
Appellants' impairment claim is based upon the theory that the bank acquiesced or consented to the sale of the corporate assets by the trustee. This theory is simply not borne out by the facts. The bank opposed the trustee's right to sell the corporate assets by filing suit in the bankruptcy court to lift that court's stay so as to allow the bank to sell the assets. The bank also in this same proceeding opposed the marshaling of appellants' personal assets along with the corporate assets in the bankruptcy proceeding. The bank further points out, and properly so, that its ability in the first instance to foreclose against the appellants' corporate assets before moving for foreclosure of their personal assets was frustrated by the action of appellants, the sole owner and controlling officers of Peacock, Inc., in placing the corporation in bankruptcy. In doing so, appellants inexorably subjected their own interests to the actions of the bankruptcy court, which had the power under Title 11, Section 363(f)(3), United States Code, to allow the trustee to sell the corporate assets despite any objections by appellants or the bank. The correctness of the decisions of the federal courts was of course not a matter for consideration by the circuit court below, nor is it here.
Furthermore, appellants' own actions below cannot be reconciled with their present attempts to fasten blame upon the bank for allowing a sale by the trustee for an inadequate price. Appellants intervened as parties in the bankruptcy proceedings and appealed from the order issued by the bankruptcy court as it related to marshaling. However, the appellants appealed this order only to the extent that it pertained to their individual lands, disregarding the bankruptcy court's authorization to the trustee to sell the corporate lands; and the appellants never appealed from or objected to the actual sales price received for either corporate asset. Therefore, appellants, having failed to avail themselves of the opportunity to challenge the adequacy of the sales price of the corporate assets in the forum having jurisdiction over the issue  the bankruptcy court  are here in effect attempting an improper collateral attack on the same proceeding.
Finally, although appellants suggest that a foreclosure sale of the corporate assets by the bank would have netted a greater sales price than the bankruptcy sale by the trustee of the same assets, this is primarily based upon supposition, rather than fact. There was evidence before the circuit court that the corporate assets had a combined value of $126,000. Since the assets were actually sold by the trustee for a combined price of $111,000, 87% of the appraisal value offered by appellee's expert, it cannot be said that the assets were disposed of at "substantially less" than their reasonable value. Magnolia Homes Mfg. Corp. v. Montgomery, 451 F.2d 934 (8th Cir.1971).
Appellants' contention that they should be discharged as guarantors because the two notes were allegedly materially altered by the bank's president, Mr. Gary Wright, merits little discussion. The differences in the various copies of the two notes (the addition of charges for credit life *735 insurance and an alleged alteration of interest rates) were adequately explained by Mr. White. As to one of the loan transactions, it appears that incomplete copies of the instruments were signed but were thereafter completed and reexecuted by appellants. As to the other note, Mr. Wright testified that the correct interest rate appeared on the note when executed by appellants and that a different interest rate appearing in certain provisions of the note applied to variable rate loans, not a fixedrate loan, as this was. Here, it is obvious that the trial court below resolved any inconsistencies and conflicts in the evidence concerning alleged alterations of the two notes in favor of the appellee. This weighing process is for the trier of fact, not this court. The only question here is whether substantial competent evidence supports the factual findings made below. Singer Housing Company v. Wren, 390 So.2d 428 (Fla. 1st DCA 1980), Rollins v. Phillips, 444 So.2d 1160 (Fla. 3d DCA 1984), Mann v. Price, 434 So.2d 943 (Fla. 2d DCA 1983), Vecta Contract, Inc. v. Lynch, 444 So.2d 1093, 1094 (Fla. 4th DCA 1984). Mr. Wright's testimony, if believed, supplies ample evidence in support of the trial court's finding below that there was no material alteration of either note.
Even assuming, arguendo, that the notes were materially altered, appellants' argument must still fail. Section 673.407(2)(a), Florida Statutes, requires proof that the alteration in question was undertaken for fraudulent purposes. Absent such a finding, a guarantor will not be discharged from his obligation. First National Bank of McCook v. Hull, 189 Neb. 581, 204 N.W.2d 90 (1973), Hughes v. Talley, 400 So.2d 253 (La. App. 1981), Lawler v. Federal Deposit Insurance Corporation, 538 S.W.2d 245 (Tex. App. 1976). Appellants made no showing that the bank supplied additional terms or materially altered the notes for a fraudulent purpose. On the contrary, the evidence is easily susceptible to the interpretation that all of appellee's actions with respect to the notes were taken in accordance with the intention of the parties. Bank of New Mexico v. Rice, 78 N.M. 170, 429 P.2d 368 (1967); see also, First National Bank of McCook v. Hull, supra; Hutcheson v. Herron, 131 Ill. App.2d 409, 266 N.E.2d 449 (1970).
Finally, appellants argue that the appellee's acquiescence in the sale of the corporate assets by the trustee destroyed the appellants' equitable right to redemption, thereby releasing them from the notes as guarantors in their individual capacity. This argument must fail. As previously noted, the evidence does not establish that the appellee bank was guilty of acquiescence. Furthermore, the right of redemption can only be exercised where there has been a tender to the mortgagee. Willson v. Buxton, 149 So. 329, 330 (Fla. 1933). Appellants made no tender to the appellee below. Appellant James William Peacock, Jr., testified that he went to Sun Federal Savings and Loan in an effort to avoid foreclosure and was told that if the appellee succeeded in "reclaiming" the corporate assets from the bankruptcy proceedings then Sun Federal would lend appellant sufficient funds to redeem his mortgages with the appellee. However, appellant admitted that he did not receive a written commitment from Sun Federal, and Mr. Wright testified that appellant never asked him to release the corporate assets. Furthermore, Mr. Wright testified that before the bankruptcy proceedings began he offered to release appellant's house to him so that appellant could obtain other financing, but appellant never tendered a firm offer of payment nor a commitment from any lending institution for a loan sufficient to meet his obligations to appellee. The evidence is susceptible to no reasonable interpretation other than as given it by the trial court.
For the foregoing reasons, the judgment is AFFIRMED.
MILLS and NIMMONS, JJ., concur.
NOTES
[*] Although a party to the proceeding below and named as appellant, the corporation raises no issues on appeal.
[1] On appeal to the United States District Court for the Northern District of Florida, the marshaling order was reversed.
[2] Appellant James William Peacock, through his attorney, made an offer in open court to the bankruptcy judge of $40,000 for purchase of the office building property. Appellant nevertheless testified in the state foreclosure action here appealed that the value of the office building property was $285,000.
[3] See, e.g., Southwest Florida Production Credit Association v. Schirow, 388 So.2d 338 (Fla. 4th DCA 1980) (loan originally secured by a partnership ranch; plaintiff credit association, without consent of defendants, subsequently allowed a partner to substitute collateral which became worthless); Guida v. Exchange National Bank, 308 So.2d 148 (Fla. 2d DCA 1975) (bank breached its duty to the endorser of a note when it released the collateral under the security agreement without the knowledge or consent of the endorser); First Bank and Trust Company v. Post, 10 Ill. App.3d 127, 293 N.E.2d 907 (1973) (failure to properly file a financing statement and thus perfect a security interest in the collateral); Re Estate of Voelker, 252 N.W.2d 400 (Iowa 1977) (same), American Bank of Commerce v. Covolo, 88 N.M. 405, 540 P.2d 1294 (1975) (same). See, generally, Annotation, 95 ALR 3d 962 (1979).