(No. 19202.

EDWARD SINGER, Appellee, *vs.* WILLIAM H. MURPHY *et al.*
Appellants.

*Opinion filed February 21, 1930—Rehearing denied April 3, 1930.*

SILBER, ISAACS, SILBER & WOLEY, (MARTIN J. ISAACS, and CLARENCE J. SILBER, of counsel,) for appellants.

JOSEPH ROSENBERG, for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellee, Edward Singer, filed his amended bill in the superior court of Cook county against appellants, William H. Murphy, Irving Shaunnessey and Margaret M. Shaunnessey, his wife, for the reformation and specific performance of a contract for the sale of real estate, for the cancellation of a deed to an undivided one-half of the real estate from Murphy to the Shaunnesseys, for the cancellation of a Torrens certificate of title issued under said deed, and for an injunction restraining the Shaunnesseys from claiming title. Upon issue being joined the case was referred to a master to take the evidence and report his conclusions. The master recommended that the bill be dismissed for want of equity, exceptions to his report were sustained, a decree was entered as prayed, and this appeal was prosecuted.

Appellants insist that appellee was not entitled to a decree under the law and the evidence.

The contract recited a consideration of $20,500. The premises were specifically described. It provided that "business zoning in connection with said property is made a condition precedent to the consummation of this deal." Murphy and Shaunnessey were named as grantors, but a line was drawn through the name of Shaunnessey and the contract was not signed by him. The conveyance was to be subject to existing leases, expiring month to month tenancies, and the purchaser was to be entitled to rents from ........, (no date being specified.) The conveyance was to be subject to all taxes and assessments levied after the year 19.., (the year being left blank,) and any unpaid special taxes or special assessments levied for improvements not yet completed and unpaid installments of special assessments which fell due after ..........., (space being left blank,) levied for improvements completed. The conveyance was to be subject to two mortgages amounting to $7500, one for $3000 and the other for $4500, payable as follows: $1000 due in six months and $3000 in eighteen months. The contract recited that the purchaser had paid $1000 as earnest money, which was to be applied on the purchase when consummated, and that the further sum of $12,500 was to be paid at the office of........., of Chicago, (the place being left blank.) The general taxes for 1925 were to be assumed by the purchaser. The sellers represented that there were two unpaid specials, with interest from the date hereof at the rate of ....... per cent per annum, (the rating being omitted.) The contract and earnest money were to be held by Shaunnessey for the mutual benefit of the parties concerned. The contract was dated "this 18 day of July, 19..," (the year being blank.)

The evidence shows that Murphy was a retail druggist in Chicago. He was also a licensed real estate broker and held the registered title, under the Torrens act, to the premises in question, at the southeast corner of Seventy-ninth street and Kenwood avenue, in Chicago. John D.

Austin and Irving Shaunnessey were real estate brokers, and the latter collected the rents from the premises and claimed to be a part owner thereof. Harry Chapman was a lawyer. On November 22, 1924, the registered title was in Clarence Rivly. Shaunnessey claimed that he was the equitable owner and that Rivly held the title for him. Rivly conveyed the title to Murphy, and it was registered in Murphy on December 4, 1924. There were two trust deeds on the property, one for $3000, and the other for $5500 with a balance due of $4500. In May or June, 1925, there were certain negotiations between Chapman, Austin and Shaunnessey for the exchange of this property for other property, but the parties could not agree upon a trade. On July 17, 1925, Singer, in writing, appointed Chapman as his agent to purchase the property for not to exceed $22,500. Austin, Chapman and Shaunnessey met in Austin's office on July 18, 1925, and after considerable discussion the price was agreed upon. All the negotiations were conducted by Chapman and Austin for Singer and by Shaunnessey for Murphy. Neither Singer nor Murphy was present at any time. Chapman prepared a contract and a carbon copy upon a form generally used for the sale of real estate in Chicago. Shaunnessey did not submit to Chapman any evidence of title but stated that he and Murphy were the owners of the property, and both names were inserted in the contract as vendors. Shaunnessey and Chapman went to Murphy's drug store and Shaunnessey handed the contract to Murphy, who read it and found its terms satisfactory, whereupon he signed both the original and the duplicate and handed them to Shaunnessey. Shaunnessey's name was stricken from both copies, and the circumstances under which this change was made are in dispute. Chapman testified that the name of Shaunnessey was stricken before the contract was signed because Murphy claimed that Shaunnessey had no interest in the property. Murphy testified that Shaunnessey's name was stricken by Shaunnessey

after it was signed because Shaunnessey said he would not sign the contract until the following Monday. After Murphy signed the contract and the duplicate, Chapman signed it in duplicate as the agent for Singer. The signatures of Murphy and Chapman, the erasure of Shaunnessey's name, and the writing of the word "copy" on the carbon copy were all made with Shaunnessey's pen and were in a peculiar purple ink. Chapman retained the carbon copy and the original was delivered to Shaunnessey. Chapman gave Shaunnessey two checks for $500 each, payable to Austin. Chapman and Shaunnessey went to Austin's office and Austin endorsed the checks and they were delivered to Shaunnessey, who held them until July 24, 1925. On that date Shaunnessey sent a letter to Austin enclosing the checks, stating that the offer for the purchase of the premises was not satisfactory to the parties concerned. Upon receipt of the checks they were deposited by Austin and paid on August 11, 1925. On September 3, 1925, Austin received a letter from Singer requesting the delivery to Singer of the two checks, whereupon Austin sent to Singer his check for $1000 payable to Singer, but before the check was paid Austin stopped payment thereon and still retains the money. The same day the contract was signed Austin wrote to Shaunnessey calling his attention to the fact that an error had been made as to the balance due, which the contract recited was $12,500, and he asked Shaunnessey to change the amount to $12,000, to correspond with the facts. On the day the contract was signed Chapman delivered the carbon copy to Singer, who signed it. It is claimed by Singer and Chapman that on the day the contract was signed it was agreed that the parties should meet at the Torrens office on July 20, 1925, to complete the sale. On that date Singer and Chapman went to the Torrens office, but neither Murphy nor Shaunnessey appeared. Singer talked to Shaunnessey over the telephone with reference to the failure of him and Murphy to appear at the appointed

place for closing the deal, to which Shaunnessey replied that he could not locate the Torrens certificate. Singer then talked to Murphy over the telephone and discussed the closing of the deal.. Murphy said he could not close the deal because he owned only a one-half interest in the property and that he could not find the Torrens certificate. On July 23, 1925, Singer sent Murphy a letter expressing disappointment at Murphy's failure to keep his appointment and close the deal. Singer told Murphy and Shaunnessey that the closing of the deal need not be delayed, because a duplicate certificate could be obtained. Shaunnessey said he would let Singer know in a few days when he would be ready. Singer testified that he called Shaunnessey a few days later and Shaunnessey stated that Murphy was not the owner, but that if Singer would give him a couple of thousand dollars more the deal would be closed, but Singer insisted that the deal be closed according to the contract. Singer was unable to procure the Torrens certificate, and on July 24, 1925, under section 92 of the Land Registration act, he registered an affidavit stating his interest, to which was attached a copy of the contract. On July 31, 1925, there was registered in the office of the registrar of titles a deed from Murphy, dated November 22, 1924, conveying an undivided one-fourth interest in the property to Shaunnessey and a like interest to his wife, and the registrar of titles issued two certificates, the first one certifying that Irving Shaunnessey and Margaret Shaunnessey each owned an undivided one-fourth interest as tenants in common, subject to certain estates, easements, encumbrances and charges, among which was the right of Singer by virtue of his affidavit registered July 24, 1925. The second certificate recited that Murphy was the owner of an undivided one-half interest subject to the same conditions as stated in the certificate to the Shaunnesseys.

It is insisted by appellants that the failure of appellee to prove a compliance with the zoning provision of the con-

tract defeated its specific performance. The contract required the property to be zoned for business purposes. This provision was for the benefit of appellee, and he had a right to waive it if he saw fit. It is admitted that Murphy refused to perform the contract. Nothing further was required to be done by appellee. He was excused from tendering the balance of the purchase price or from performing any other act required of him by the contract. The filing of the bill and the offer of appellee to perform all obligations required of him were sufficient. Murphy cannot defeat specific performance by reason of his own default. Appellee had the right to take the title as it was and demand specific performance. *McKennan* v. *Mickelberry,* 242 Ill. 117.

Appellants contend that the zoning provision may have been for the benefit of Murphy, who owned other property in the vicinity, and that appellee did not have the right to waive such provision if it was also for the benefit of Murphy. The contract is not capable of this construction sought to be placed upon it by appellants.

Appellants insist that the contract is so incomplete, indefinite and uncertain as to make specific performance impossible. In support of this contention it is insisted that the contract contains no date after which the purchaser is to be entitled to the rents; that no year is specified after which the purchaser is to be liable for the taxes and special assessments; that the contract recites that the deed is to be made subject to two mortgages amounting to $7500, one for $3000, and the other for $4500 due in two payments, one of $1000 and the other of $3000, making a total of only $4000 instead of $4500; that the consideration was $20,500, $1000 earnest money was paid, the contract provided for a cash payment of $12,500, making a total of $21,000 instead of $20,500, and that the year of the execution of the contract was omitted.

The printed form had a blank space in which to insert the date from which the purchaser was to be entitled to

the rents. This blank was not filled. By failing to fill this blank the most that can be said on this point is that the contract was silent on this subject. The execution of a deed operates, in law, to convey rents accruing thereafter. (*Nelson* v. *Joshel,* 305 Ill. 420.) If Murphy had executed a deed appellee would have been entitled to the rents after the date of the delivery of the deed, and it was so provided in the decree.

The contract provided that the general taxes for the year 1925 were to be assumed by the purchaser, and the sellers represented that there were two unpaid specials. The blanks with reference to these dates were not filled because of the special provisions above quoted, which were sufficient to fix the dates with reference to the payment of taxes and special assessments. The failure to fill a blank on a printed contract where the parties actually make a provision for the taxes and special assessments does not make the contract so incomplete and indefinite as to render specific performance impossible.

Murphy agreed to convey the property subject to two mortgages aggregating $7500, and no claim is made that the property was not subject to two mortgages aggregating that amount. It is admitted that one of the mortgages was for $3000. As to the other mortgage, upon which a balance of $4500 was due, it was recited that $1000 thereof was due on or before six months from date and $3000 was due eighteen months after date. The total amount due on the two mortgages was correctly stated in the contract. The error was as to the distribution thereof. It appeared on the face of the contract. It was an error of computation and not an error as to the total amount of the payments to be assumed. The bill prayed for a reformation of the contract in this respect. The mistake was a mistake of fact and not of law, the mistake was admitted by appellants, it was mutual and common to both parties, and the court properly corrected this error. *Sallo* v. *Boas,*

327 Ill. 145; *Wykle* v. *Bartholomew,* 258 id. 358; *Correll* v. *Greider,* 258 id. 479; *Lines* v. *Willey,* 253 id. 440; *Koch* v. *Streuter,* 218 id. 546.

The contract provided that the purchase price was $20,500, subject to two mortgages of $7500, and that $1000 earnest money had been paid, leaving a balance due of $12,500. All of these amounts except the last are admitted to be correct, therefore the balance due was $12,000 instead of $12,500. It is undisputed that the error as to the balance due was discovered the same day the contract was signed, and Austin on the same day wrote to Shaunnessey calling his attention to the error and asking that it be corrected. If there was any dispute as to the amount due Murphy there might be some point to counsel's argument on this subject, but inasmuch as Murphy admits that the $12,500 was a mistake we do not see any force in the argument made by him on this point. The decree properly corrected this error for the reasons above stated for correcting the error as to the balance due on the mortgages.

It is insisted by appellants that the contract was so materially altered by appellee's agent after it was signed by Murphy and without his consent as to destroy it for all purposes of enforcement. In support of this contention it is insisted that after the contract was signed by Murphy a line was drawn through the name of Shaunnessey; that the $12,500 was changed to $12,000; that the name of Chapman did not appear at the bottom of the duplicate copy when it was signed; that the words "month to month tenancy" were not in it when it was signed, and that it was signed by Singer after it was signed by Chapman. These contentions are not sustained by the evidence. The contract was prepared in duplicate. Both copies contained the name of Shaunnessey as one of the owners of the property. Shaunnessey's name was put in the contract at his suggestion and request. There is a conflict in the evidence, as above recited, as to the circumstances under which the line

was drawn through the name of Shaunnessey. The decree found that the change was made before the contract was signed by Murphy, and the finding is sustained by the evidence. It is unreasonable to suppose that because Shaunnessey did not intend to sign the contract until the following Monday he would consider it necessary to strike his name from the contract, in view of the fact that he claimed to own part of the premises and his name was inserted in the contract at his own suggestion and request. After the contract was signed by Murphy and Chapman the original was delivered to Shaunnessey, who was the escrowee named therein, and it remained in his possession until it was produced on the trial. It is not contended that any changes were made in the original except the erasure of the name of Shaunnessey. If any other changes were made in the original appellee was not responsible therefor. The bill was filed to specifically perform the original, which under the terms of the contract was the only contract in existence and was held by Shaunnessey pending settlement. If any changes were made in the duplicate they would not invalidate the original. (*Hayes* v. *Wagner,* 220 Ill. 256.) As to the insertion of the month to month clause, Murphy testified that he would not state positively that these words were in the contract before he signed it. These words in the original contract were in pen and ink but in the carbon copy produced by appellee they were in typewriting. It is apparent, however, that they were in both copies. The evidence did not establish an alteration. Neither Shaunnessey nor his wife testified. Appellee, Chapman and Austin testified for appellee and Murphy alone testified for appellants. The evidence on all disputed facts sustains the findings of the decree.

Appellants insist that appellee acquired no rights by the registration of his affidavit on July 24, 1925, under section 92 of the Torrens act; that the statute required the contract itself to be registered, which was not done, there-

fore the registration on July 31, 1925, of the deed of November 22, 1924, from Murphy to Shaunnessey, must control. This contention is in direct conflict with the provisions of the statute. Under section 42 of the Torrens act, when the title was registered on December 4, 1924, in Murphy, a person taking a transfer from Murphy was not required, except in case of fraud, to inquire into the circumstances under which Murphy held the title, and he was not affected with notice, actual or constructive, of any unregistered trust, lien, claim or demand, and the knowledge of any such unregistered claim was not, of itself, to be imputed as fraud. Under this section appellee was not chargeable with any notice he might have as to any interest the Shaunnesseys might claim under their alleged deed of November 22, 1924. Appellee had the right to rely upon the registered title of Murphy. After appellants refused to perform under the contract of sale, appellee had a right, under section 92, to protect his rights by filing an affidavit in the office of the registrar setting forth his interest, and it was the duty of the registrar to enter a memorial thereof. The affidavit filed was in compliance with the statute. It was only necessary to file an affidavit and the contract did not have to be filed. Section 59 defines the instruments which may be filed, including contracts of sale, and section 60 provides the method of filing them when the registered holder wants them filed, but section 92 provides the only method of filing claims adverse to the rights of the registered owner, and such method is by affidavit, as was done in this case.

We find no reversible error, and the decree is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*