## IN THE MATTER OF THE APPLICATION OF BISHOP TRUST COMPANY, LIMITED, TO REGISTER AND CONFIRM TITLE TO LAND.

### No. 2442.

ARGUED DECEMBER 3, 1940.      DECIDED MARCH 10, 1941.

PETERS AND KEMP, JJ., AND CIRCUIT JUDGE STAFFORD IN PLACE OF COKE, C. J., ABSENT.

OPINION OF THE COURT BY PETERS, J.
(Circuit Judge Stafford dissenting.)

This is a proceeding before the land court brought by the Honolulu board of water supply to determine what interest, if any, Patricia Lord, widow of the late Edmund

Joseph Lord, had as doweress in forty lots in the St. Louis college heights tract, title to which, included with other lots in the same tract, during coverture, was registered in her husband as owner in fee simple but at the time of his death was registered in said board of water supply in fee simple as trustee.

The board of water supply referred to is the board of water supply of the City and County of Honolulu created and existing under and by virtue of R. L. H. 1935, §§ 3260-3280. The forty lots in the St. Louis college heights tract may be for convenience divided into two groups, A and B, respectively.

The lots in group A, with other lots in the same tract of which he was the registered owner, had been, on December 14, 1935, conveyed by Mr. Lord to the water board in trust in conformity with the provisions of R. L. H. 1935, § 81, as security for a bond conditional for the full and faithful performance of a contract for public work in accordance with the terms and intent thereof and also for the prompt payment to all others for all labor and materials furnished by them to the contractor in which the water board was obligee and the said Lord was surety. The work subject to the contract was known as job number 50-51-W. The lots in group B, with others of which Mr. Lord was the registered owner, on the same day had similarly been conveyed by Mr. Lord to the water board in trust in conformity with the same statutory provisions and under similar circumstances in respect of a bond given on another contract for public work known as job number 53-W. In the bond given in respect to job 53-W the water board was obligee and said Lord was surety. When Mr. Lord acquired the fee simple title to the forty lots referred to and the two transfer certificates of title certifying to his ownership thereof were issued, Mr. Lord was an unmarried man and was so described

in said certificates of title. However, on December 14, 1935, Mr. Lord was a married man, having on September 14, previous, married Patricia Lord. In each of the trust deeds of December 14, 1935, Patricia Lord joined with her husband and released her claim to dower in the lands thereby conveyed. On October 15, 1936, upon further demand of the water board, in compliance therewith and in conformity with the provisions of section 81, Mr. Lord, by way of additional security upon the bond given in respect of the contract for job number 50-51-W, executed a further trust deed to the water board of lots in the St. Louis college heights tract, including the lots in group B theretofore conveyed by him in trust to the water board on December 14, 1935. Mrs. Lord did not join with her husband in the trust deed of October 15, 1936, by way of release of her claim to dower in and to the land thereby conveyed or otherwise. As far as the records of the land court disclose, the only release executed by her of her claim to dower in the lots included in group B is that contained in the trust deed of December 14, 1935.

The trust deeds referred to were duly registered in the office of the assistant registrar of the land court at or about the respective dates of their execution. Upon the registration of the trust deeds of December 14, 1935, three new certificates were issued to the water board, two covering the lots included in group A and one covering the lots included in group B. Each certificate was issued subject to the terms of the provisions of the trust deed by which the same were conveyed to the water board. Upon the registration of the trust deed of October 15, 1936, no new certificate was issued but the same was noted as an encumbrance upon the certificate theretofore issued to the water board for the lots included in group B. When the certificates of title to the lots included in group A were issued to the water board, the existing certificate of title

thereto, in the name of Edmund Joseph Lord and from which the succeeding certificates were issued to the water board, was canceled.

Thereafter and on, to wit, September 15, 1937, in an action on the bond given in respect of the contract for job number 50-51-W brought in conformity with the provisions of R. L. H. 1935, § 4364, a judgment or decree was entered against the contractor and the surety on the bond in the full sum and amount of $106,357.26, upon which at the time of the institution of the within proceedings there remained an unpaid balance of $42,061.99 with legal interest from date of judgment.

Thereafter and on, to wit, October 21, 1937, upon petition by Patricia Lord in that behalf, the judge of the land court ordered that the marriage of Patricia Lord to Edmund Joseph Lord be noted upon the respective certificates of title involved, *viz.*, transfer certificate of title in the name of Edmund Joseph Lord for lots in the St. Louis college heights tract, including the lots in group B and the three certificates of title issued to the water board covering lots in the same tract, including lots in group A and group B. On the same day notations of said marriage were made accordingly upon the respective certificates of title referred to. This was the first time that any transfer certificate of title in respect to the lots included in group A or group B contained any notation of such marriage either as an encumbrance or otherwise.

It does not appear from the record that the contractor defaulted in respect to the contract for job number 53-W or that any liability accrued against the obligors upon the bond given on said contract. In the absence of evidence to the contrary, it may be assumed that Mr. Lord and after his death his heirs or devisees were entitled to a reconveyance to them by the water board of the reversion subsisting under the trust deed of December 14, 1935,

given in respect of the bond on job number 53-W, subject, however, to the trust created by the trust deed of October 15, 1936, given as additional security in respect of the bond given on the contract for job number 50-51-W.

Mr. Lord died June 27, 1938.

Pursuant to the powers conferred upon it by the provisions of the trust deed of December 14, 1935, given in respect of the bond on the contract for job number 50-51-W, the water board, after judgment against the contractor and surety on said bond, sold the lots included in group A at public auction and the net proceeds of such sale with the lots included in group B are the subject of the instant proceedings.

The trial court held that the new transfer certificates registered in the name of the water board for the lots included in groups A and B took priority over the right of dower thereto inchoate in Patricia Lord and that the water board was a purchaser in "good faith" within the meaning of that term as employed in R. L. H. 1935, § 5041.

A decree was entered accordingly and from the decree so entered Patricia Lord prosecuted error. The assignments of error fairly present for review the conclusions of the trial judge.

It is clear that Patricia Lord by voluntarily joining with her husband in the conveyance by him to the water board of the lots included in group A and therein releasing her claim to dower barred herself under the provisions of R. L. H. 1935, § 4839, of her right to dower in the premises subject thereto. Moreover this is so irrespective of the state of the title to said lots as disclosed by the existing certificates of title in the office of the assistant registrar of the land court under which title to the same was registered or the priority between themselves of the encumbrances noted thereon. It is true that her release of dower operated only to the extent necessary to accom-

plish the purposes of the grant. But the lots subject thereto have been sold by the water board. The legality of their sale is not questioned. Consequently in the absence of evidence showing a restoration of the right of dower or the existence of a reversionary interest in whole or in part in the net proceeds of sale the bar of statute is complete.

It is equally clear that were the lots included in group B, subject to the instant proceedings, not registered land, Mrs. Lord would be entitled to her rights as doweress in any reversion therein subsisting after the discharge of the trusts expressed in the trust deed of December 14, 1935, by which they were conveyed to the water board. Not having been released, her right of dower thereto as subsisting upon the date of the grant of October 15, 1936, still attached to the reversion, if any, to accrue after the discharge of the trusts created by the said grant of December 14, 1935, covering the same lots.

But the lots included in group B were registered land and subject to the provisions of law pertaining to the registration of land titles. (R. L. H. 1935, § 5045.)

Explicit and implicit in the provisions of law pertaining to the registration of land titles is the intent and purpose that a certificate of title signify the present state of the title to the land subject thereto and that the title thereby reflected be indefeasible and free from all charges, liens and encumbrances, including rights of husband and wife, if any, except those preserved against it by notation thereon or by provisions of law.[1] Upon registration the

---

[1] *Robinson* v. *Kerrigan*, 151 Cal. 40, 44, 90 Pac. 129; *Estate of Allan*, 28 Cal. App. (2d) 181, 82 Pac. (2d) 190; *Brace* v. *Superior Land Co.*, 65 Wash. 681, 688, 118 Pac. 910, 913; Niblack, Pivotal Points in the Torrens System, 24 Yale L. J. 275; *Curry* v. *Lybarger*, 133 Ohio St. 55, 11 N. E. (2d) 873, 875; *Naiburg* v. *Hendriksen*, 370 Ill. 502, 19 N. E. (2d) 348; 5 Thompson, Real Property § 4154, p. 192 (1924); 5 Tiffany, Real Property (3d ed.) § 1314, p. 109.

original certificate of title sets forth the estate of the owner and also, in such manner as to show their relative priority, all particular estate, mortgages, easements, liens, attachments and other encumbrances, including rights of husband and wife, if any, to which the land or the owner's estate is subject. (R. L. H. 1935, §§ 5038, 5039.) Upon the issuance of a new certificate it is incumbent upon the assistant registrar to state therein all encumbrances or claims adverse to the title of the registered owner that appear upon the registration book except as far as they may be simultaneously released or discharged. (R. L. H. 1935, § 5058.) A certificate of title is conclusive as to all matters contained therein except as otherwise provided by law. (R. L. H. 1935, §§ 5000, 5029, 5037, 5038, 5045, 5047.)

By section 5041 it is provided: "Every applicant receiving a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land who takes a certificate of title for value and in good faith, shall hold the same free from all incumbrances, except those noted on the certificate, and any of the following incumbrances which may be subsisting, namely [here follow the statutory exceptions which are inapplicable to the instant case]." The right of dower incident to the relation of husband and wife is unquestionably an encumbrance within the meaning of the term "incumbrances" as employed in section 5041.

The transfer certificates of title under which the lots in question were registered in Mr. Lord as the owner in fee simple described him as an unmarried man. The water board as a purchaser was entitled under the statutes to rely upon that statement. None of the records or files in the office of the assistant registrar in respect to registered ownership of the lots in question at the time that the water board took certificates of title thereto contained

any notation of Mr. Lord's marriage to Patricia Lord, or any notation constituting notice of any claim by Patricia Lord of a right of dower in and to the lots in question. The water board took certificates of title from which were absent notations of the marriage of Mr. Lord to Mrs. Lord or any memorandum imputable as notice of claim of dower inchoate in Mrs. Lord. Ordinarily the encumbrance first filed constitutes the prior lien. The registration of the respective trust deeds from Mr. Lord to the water board of December 14, 1935, preceded in point of time the registration of the notice of Mrs. Lord's marriage to Mr. Lord. The acceptance by the water board of certificates of title to the lots subject to said trust deeds preceded the registration of the notice of marriage. The registration of the trust deed of October 15, 1936, also preceded the registration of the notice of marriage. Consistently with the provisions of R. L. H. 1935, § 5051, no new certificate was issued and the registration of the trust deed of October 15, 1936, was noted as an encumbrance on the certificate of title theretofore issued to the water board covering the same lots. The entry of the latter notation on the earlier certificate had the same legal effect as far as an encumbrance subsequently registered is concerned as the issuance of a new certificate in the name of the water board bearing the notations of both trust deeds relating to the lots subject to said certificate. (*Realty Co.* v. *Willowick,* 136 Ohio St. 257, 25 N. E. [2d] 345.) The conclusion is inevitable that under the provisions of section 5041, if the water board was a purchaser for value and in good faith, it took the certificates of title to the lots in question free from any right of dower inchoate in Mrs. Lord.

The claim is made by Mrs. Lord that the water board did not take its certificates of title to the lots in question in "good faith" as that term is employed in section 5041. No claim is made that it was not a purchaser for value.

The only evidence presented of lack of good faith was the knowledge of marriage of Mr. Lord to Patricia Lord imputable to the water board by its acceptance on December 14, 1935, of the two trust deeds in which Patricia Lord joined by way of release of dower in and to the respective lots subject thereto. In our opinion, however, this is insufficient upon which to predicate a finding that the water board was not a purchaser in "good faith" within the meaning of that term as employed in section 5041.

The term "good faith" has been variously defined. Definitions in the abstract, however, are of little value. No cases have been called to our attention and independent research has developed none in which the term "good faith" has been construed in relation to a statute similar to the provisions of section 5041. The case of *Carlson* v. *Carlson*, 124 Cal. App. 207, 12 Pac. (2d) 165, cited by appellant, did not involve a purchaser for value and in good faith. The cases of *Czecz* v. *New Era Association*, 350 Ill. 200, 182 N. E. 742, and *Simpson* v. *Manson*, 345 Ill. 543, 178 N. E. 250, cited by appellee, are referable to the statute of Illinois expressly providing that knowledge without actual fraud does not deprive a purchaser of immunity against encumbrances not noted upon his certificate. (See 27 Jones Ill. Stat. Ann. 132.040 [1936]. See also *Singer* v. *Murphy*, 338 Ill. 620, 170 N. E. 777; *Bjornberg* v. *Myers et al.*, 212 Ill. App. 257.) In a case involving a Colorado statute similar in its provisions to those of section 5041, the supreme court of that State declined to decide whether actual knowledge of an unregistered encumbrance constituted bad faith, the antithesis of good faith required by the statute. (*Bank* v. *Fischer*, 75 Colo. 371, 226 Pac. 146.)

Upon principle, however, we see no difference in the meaning of or connotations attributable to the term "good

faith," whether used alone as in section 5041 or accompanied by an express statutory provision, such as that obtaining in Illinois. If, as we hold, a certificate of title is unimpeachable and conclusive except as otherwise provided by law, it would be illogical to say that it may be impeached if the purchaser for value had knowledge of an existing unregistered encumbrance. To do so would be to rob a certificate of title of its conclusive and unimpeachable character and place it in the same category as the ordinary record in the bureau of conveyances. If the intent and purpose of the law pertaining to the registration of land titles is to be preserved, the integrity of certificates of title must be scrupulously observed and every subsequent purchaser of registered land who takes a certificate of title for value, except in cases of fraud to which he is a party, is entitled under the provisions of section 5041 to hold the same free from all encumbrances except those noted on the certificate and the statutory encumbrances enumerated.

Nor is Mrs. Lord, from considerations of equity, entitled to relief. Dower immediately upon marriage accrues by operation of law to the benefit of the wife in lands of which her husband is seized or concurrently with its subsequent acquisition by him during coverture. Dower being a creature of law attaches without the formality of any memorial *inter vivos*. Rights incident to the relation of husband and wife affect land registered as well as unregistered. (R. L. H. 1935, § 5040.) The statutes pertaining to land registration contain ample provision for notice of the relation of husband and wife existing at the time of registration (R. L. H. 1935, §§ 5040, 5014, 5038 and 5039), or created subsequent to entry of decree. (R. L. H. 1935, § 5096.) Under the provisions of the section last cited in order to give notice of his marriage subsequent to the entry of the decree it was incumbent

upon Mr. Lord, the registered owner, or Mrs. Lord, as an "other person in interest" within the meaning of the statute, to take the necessary steps to have the existing certificate or certificates affecting the land amended consistently with the creation of the relation since its or their entry. This they neglected to do until after certificates of title had been issued to the water board and there had occurred a breach of the bond for which title vested in the water board as security. As between Mr. and Mrs. Lord on the one hand and the water board on the other the equities are all in favor of the water board. It was not incumbent upon the water board despite its knowledge of the relation of husband and wife between the registered owner and Mrs. Lord to investigate the facts and determine whether there was a subsisting right of dower inchoate in Mrs. Lord or the same had been barred by voluntary release on the part of Mrs. Lord or otherwise.

In conclusion we might add that nothing that we have said should be construed as intimating in any way the legal effect, if any, of the failure of the registered owner or other person in interest to effect an amendment of the existing certificates registered in the name of Mr. Lord upon the right of dower inchoate in Mrs. Lord had rights of the purchaser for value and in good faith not intervened and Mr. Lord had died seized of the land in question. We are alone concerned with the legal effect of the failure by the parties concerned to effect such amendment in respect to the rights, under the statute, of a purchaser for value possessing actual notice of the creation of the relation of husband and wife subsequent to entry of the certificate of the registered owner.

Consistently with the views herein expressed the decree appealed from is affirmed.

*C. B. Dwight* filed briefs for respondent but subsequently withdrew as her attorney and did not argue.

*D. H. Porteus* and *C. D. Pratt* (*Stanley, Vitousek, Pratt & Winn* on the brief) for petitioner.

Circuit Judge Stafford: I respectfully dissent.