110 P.3d 1042

**AAMES FUNDING CORPORATION, a California corporation, dba Aames Home Loan, Plaintiff–Appellee**

v.

**Ponciano Millora MORES and Patricia Rosete Mores, Defendants– Appellants,**

and

**John Doe 1–10, Jane Does 1–10, and Doe Partnerships, Corporations and Other Entities 1–20, Defendants.**

No. 24758.

Supreme Court of Hawai'i.

April 22, 2005.

As Amended May 11, 2005.

Reconsideration Granted in part and Denied in part, May 11, 2005.

Gary Victor Dubin, on the briefs, Honolulu, for defendants-appellants.

Adelbert Green (Dwyer, Schraff, Meyer, Joseem & Bushnell), on the briefs, Honolulu, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

Defendants–Appellants Ponciano Millora Mores and Patricia Rosete Mores (the Moreses) appeal from the October 11, 2001 order of the district court of the first circuit (the district court)[1] granting a writ of possession for property located in Aiea, Hawai'i (the Property) in favor of Plaintiff–Appellee Aames Funding Corporation (Aames). The Moreses also challenge the October 11, 2001 findings of fact and conclusions of law, and the October 24, 2001 order of the district court denying the Moreses' motion to dismiss filed on October 3, 2001.

Based on the reasons set forth herein, the district court's October 11, 2001 and October 24, 2001 orders are affirmed.

I.

On July 5, 2000, the Moreses entered into a residential mortgage loan (Mortgage) with Aames in the principal amount of $227,500

for the Property. The Mortgage was filed in the Office of the Registrar of the Land Court of the State of Hawai'i (Land Court) as Document No. 2637478, and was the first mortgage lien on the Property.

The Mortgage expressly states that the Moreses "do[ ] hereby mortgage, grant and convey to [Aames], with power of sale, the [Property]." The Mortgage also contains conditions regarding acceleration of the loan, notice for default and, subsequent forfeiture of the loan, and the curing of default. The Mortgage states in relevant part:

> If the default is not cured on or before the date specified in the notice, [Aames], at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and *may invoke the power of sale* and any other remedies permitted by applicable law.

(Emphasis added.)

On August 14, 2000, the Moreses filed a Warranty Deed in the Land Court, executed on July 6, 2000, which conveyed the Property to the Moreses family trust dated April 24, 1995. On November 15, 2000, Aames mailed, *inter alia,* a "Notice of Default" to the Moreses indicating that the Moreses had breached their financial obligations under the Mortgage and owed $8,685.01 on the Mortgage as of November 15, 2000.

On January 4, 2001, Aames issued a "Notice for Non–Judicial Foreclosure of Sale" to the Moreses. The notice announced the sale of the Property by public auction. On April 10, 2001, a second "Notice of Non–Judicial Foreclosure Sale" was sent to the Moreses. This notice was sent via certified mail, specified the default, detailed the action required to cure said default, indicated the date by which the default must be cured, and stated that non-compliance would result in acceleration of the mortgage sums due and in the sale of the Property.

Apparently, a public auction of the Property was conducted[2] and on July 17, 2001,

---

1. The Honorable David L. Fong presided.

2. The April 10, 2001 "Notice of Non–Judicial Foreclosure Sale" indicated that a public auction

was scheduled for May 31, 2001 at 12:00 noon at the front entrance of the First Circuit Court at 777 Punchbowl Street, Honolulu, Hawai'i.

Aames filed a Commissioner's Deed in 'the Land Court denominated as Document No. 2722965. This Deed was executed "in accordance with the terms of that certain Affidavit of Exercise of Power of Sale dated June 15, 2001, recorded in [the Land Court] as Document No. 2714670."

On July 20, 2001, the Land Court issued Aames a Transfer Certificate of Title (TCT) No. 587,098 to the Property. The Moreses refused to surrender possession. On August 15, 2001, Aames filed an action for ejectment against the Moreses in the district court. On August 29, 2001, the Moreses mailed Aames a letter notifying Aames of the Moreses' "right and option to cancel and rescind" the Mortgage "based upon numerous federal Truth–In–Lending Violations ..., none the least of which was [Aames's] failure to deliver ... any completed copies of the Notice of Right to Cancel with all requisite dates filled in."

On August 30, 2001, citing the Hawai'i District Court Rules of Civil Procedure (HDCRCP), the Moreses filed a "Rule 12.1 Joint Declaration ... Objecting to Subject Matter Jurisdiction" (declaration). Apparently, on August 31, 2001, the district court conducted a return hearing, in which the Moreses appeared pro se and entered general denials. Aames's ejectment action was set for trial on October 5, 2001.

On October 3, 2001, the Moreses filed a motion to dismiss based on (1) "lack of subject matter jurisdiction" and (2) "lack of admissible evidence." On October 3, 2001, Aames responded with a memorandum in opposition.

On October 5, 2001, trial on Aames's ejectment action was conducted before the district court. Trial began with both parties stipulating to the authenticity of (1) a certified copy of the July 17, 2001 Commissioner's Deed, (2) a certified copy of the 2001 real property tax assessment records for the Property, and (3) a certified copy of TCT No. 587,098. The district court accepted all three documents into evidence.

Aames then requested that the district court "take judicial notice of the general denial that the [Moreses] entered in this case, recognize ... that they dispute possession, [and] our right to possession of the [P]roperty[.]" The Moreses responded to this request by orally moving to "dismiss the case on the basis that [Aames has] not fulfilled their [sic] requirements under law for presenting admissible evidence." In this regard, the Moreses made six "offers of proof." [3] The district court accepted the Moreses' offers of proof subject to Aames's objection as to the relevance of said offers. Thereafter, the district court ruled that such offers were not relevant and sustained Aames's objection.

The district court then announced its ruling "in favor of [Aames]" and "grant[ed] judgment for possession and writ of possession ... effective ... November 1[, 2001]." On October 11, 2001, the district court entered its written findings of fact, conclusions of law and order. The district court found in relevant part as follows:

1. Aames ... holds title to the [Property];

2. Aames ... is the registered owner of the [Property];

3. [The Moreses] disputed [Aames's] right to possession of the subject property

3. The offers of proof were as follows:
  [(1)] they did not receive the contractual required notice of default that their loan was in default which is a condition precedent to the right of the lender to accelerate the loan and to exercise the power of sale .... [(2)] they did not receive the contractual required notice of right to cancel which is specified in the Mortgage as a precondition to the right of [Aames] to exercise the power of sale .... [(3)] the requirements at the auction were that the bidders had to have a hundred-percent deposit in advance .... [(4)] the auction price was a hundred thousand dollars or more below' the fair market value .... [(5)] they have never seen, they have never been presented, and this court lacks in the record[,] admissible evidence showing the general loan ledger as required by ... [*GE Capital Hawai'i, Inc. v. Yonenaka*, 96 Hawai'i 32, 25 P.3d 807 (App.2001)] ..., and [(6)] they sent a cancellation letter ... to Aames ... whereby within three years, they cancelled the Mortgage pursuant to their rights under federal law and ... that they did not each receive two completed copies of ... the notice of right to cancel, thereby as a matter of law cancelling this loan.

by entering a general denial to the complaint filed by [Aames] for Ejectment.

The district court ordered "Judgment for Possession" and a "Writ of Possession" be entered in favor of Aames. Attorney's fees and costs were awarded to Aames. On October 24, 2001, the district court entered its "Order Denying Mores Defendants' Notice of Motion and Motion to Dismiss Filed October 3, 2001."

On November 9, 2001, the Moreses filed a notice of appeal. As mentioned previously, they appeal from the October 11, 2001 order and dispute the October 11, 2001 findings of fact and conclusions of law and the October 24, 2001 order denying their motion to dismiss the complaint.[4]

## II.

On appeal, the Moreses argue that (1) the district court lacked subject matter jurisdiction because their declaration established that Aames's complaint involved a dispute as to title to real property, (2) Aames's complaint failed to state a claim for relief that could be granted by the district court because the complaint did not plead that the Mortgage was in default during the attempted acceleration, non-judicial foreclosure sale, and at the time title was transferred, (3) the "power of sale" clause is an unenforceable "contract of adhesion," rendering Aames's non-judicial transfer of title both unconscionable and void, and (4) the district court had no subject matter jurisdiction to eject the Moreses because the Moreses did not receive the requisite copies of the Truth In Lending Act (TILA) "Notice of Right to Cancel."

Aames, in response, argues that (1) the district court had jurisdiction to decide the ejectment proceeding because Aames's title to the Property was conclusive and unimpeachable following the entry of a certificate of title in favor of Aames, (2) the district

court had jurisdiction to decide the ejectment proceeding because the Moreses did not file an affidavit that complied with the "unambiguous" requirements of HDCRCP Rule 12.1, and (3) the Moreses did not raise a timely or proper defense to the ejectment proceeding.

## III.

■■■ "The existence of [subject matter] jurisdiction is a question of law" that is "review[able] *de novo* under the right/wrong standard." *Lester v. Rapp*, 85 Hawai'i 238, 241, 942 P.2d 502, 505 (1997). *See also Casumpang v. ILWU, Local 142*, 94 Hawai'i 330, 337, 13 P.3d 1235, 1242 (2000) ("A trial court's dismissal for lack of subject matter jurisdiction is a question of law, reviewable *de novo*.") Additionally, "review of a motion to dismiss . . . is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff." *Id.* (quoting *Norris v. Hawaiian Airlines, Inc.*, 74 Haw. 235, 239–40, 842 P.2d 634, 637 (1992) (brackets omitted)). The trial court, however, "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *Id.* (quoting *Norris*, 74 Haw. at 239–40, 842 P.2d at 637 (internal quotation marks, brackets, and citations omitted)).

## IV.

■■■ With respect to the Moreses' first argument regarding subject matter jurisdiction, Hawai'i Revised Statutes (HRS) § 604–5(d) (Supp.1995) states in relevant part that "the district courts shall not have cognizance of real actions, nor actions in which the title to real estate comes in question[.]" The Moreses argue that their declaration of August 30, 2001 raises an issue as to title to real property in accordance with HDCRCP Rule

---

4. The October 11, 2001 order finally determined the complaint for ejectment and is an appealable final order under Hawai'i Revised Statutes (HRS) § 641–1(a), which authorizes an appeal from a final order in a district court civil case. *Casumpang v. ILWU, Local 142*, 91 Hawai'i 425, 426, 984 P.2d 1251, 1252 (1999) (per curiam) (explaining that a district court order that finally decides all rights and liabilities of all parties is

an appealable final order under HRS § 641–1(a)). The Moreses' motion to dismiss the complaint, that was disposed of by the court's October 24, 2001 denial, is reviewable on appeal from the October 11, 2001 order. *See Pioneer Mill Co. v. Ward*, 34 Haw. 686, 694 (1938) (stating that an appeal from a final judgment "brings up for review all interlocutory orders not appealable as of right which deal with issues in the case").

12.1 (2001). In pertinent part, HDCRCP Rule 12.1 provides as follows:

> Whenever, in the district court, in defense of an action in the nature of an action of trespass or for the summary possession of land, or any other action, *the defendant shall seek to interpose a defense to the jurisdiction to the effect that the action is a real action,* or one in which the title to real estate is involved, *such defense shall be asserted by written answer or written motion, which shall not be received by the court unless accompanied by an affidavit of the defendant, setting forth the scope, nature and extent of the title claimed by defendant to the land in question, and such further particulars as shall fully apprise the court of the nature of defendant's claim.*

(Emphases added.)

The Moreses' declaration states in item 2, that "[t]his action involves a dispute as to title to real property." In item 8, the Moreses declare, "[W]e claim that we have title to the [P]roperty[.]" However, Aames maintains the Moreses did not comply with HDCRCP Rule 12.1 because (1) the Moreses did not assert their defense in a "written answer" or "written motion," (2) the Moreses' mere assertion that "title is at issue" was insufficient to validate their claim, and (3) even if the declaration is construed as a proper "written answer or ... motion," the Moreses failed to demonstrate the merits of their claim in not identifying the "source,"

"nature," and "extent" of their title claims in an affidavit.

According to HDCRCP Rule 12.1, the "defense [regarding title] *shall* be asserted by written answer or written motion[.]" (Emphasis added.) The Moreses contend that they satisfied this requirement because the written motion to dismiss "referenc[ed]" their declaration as to title and was "specifically recognized, argued, and denied by the district court[.]" In addition, they point out that the district court declared in its finding no. 3 that the "[Moreses] disputed [Aames's] right to possession of the subject property by entering a general denial [5] to the complaint filed by [Aames] for Ejectment."

Although the Moreses' declaration and subsequent motion to dismiss together may be construed as fulfilling the HDCRCP Rule 12.1 requirement that a defense to title be asserted in a "written motion" or "written answer," the Moreses failed to assert the "source," "nature," and "extent" of their title claims.

The declaration merely asserts that title was at issue, and fails to provide information as to the "source," "nature," and "extent" of this claim. The Moreses' declaration and memorandum of law include statements objecting to the manner in which the Mortgage was consummated such as the purported lack of an explanation of the "power of sale" clause or of an appended copy of the TILA "Notice of Right to Cancel." [6] None of these matters, however, are germane to informing the court as to the "source," "nature," and

---

**5.** At the October 5, 2001 hearing, Aames's counsel stated, in relevant part, that

> [w]e'd ask the [c]ourt take judicial notice of the general denial that the [Moreses] have entered in this case, recognize it as a confession, that they dispute possession, our right to possession of the [P]roperty, and with that, we would submit that we've met our burden of showing that we have title of the [P]roperty and that our right to possession is in dispute, being disputed.

**6.** The Moreses' declaration stipulated that the Mortgage states that "if default is not cured ... Lender ... may invoke the power of sale[.]" Reading the declaration and the memorandum of law together, the Moreses claim that (1) they were not allowed adequate time to review the terms and conditions of the Mortgage, (2) these

terms and conditions were not explained to them, (3) as laypeople, the Moreses had unequal bargaining powers in comparison to Aames, (4) Aames's failure to explain the "power of sale" clause rendered the Mortgage unenforceable as a "contract of adhesion[,]" (5) without notice and a hearing, "substantial property rights" were lost as a constitutional matter "at the time of the non-judicial auction[,]" and (6) the non-judicial foreclosure procedures pursuant to HRS § 667-5 raise fairness and due process problems insofar as a 100% cash closing was required at the public auction that allowed Aames to purchase the Property on "self-determined terms."

The Moreses' declaration also asserted that Aames failed to provide the required federal TILA "Notice of Right to Cancel," allowing them to cancel the loan within three years of its consummation.

"extent" of the title claimed by the Moreses as to the land in question. Hence, the Moreses' mere assertion that "title is at issue" is insufficient to validate their jurisdiction defense.

Aames maintains that *Territory v. Kapiolani Estate, Ltd.*, 18 Haw. 640 (1908), is instructive as to the objective of HDCRCP Rule 12.1. In *Kapiolani Estate*, a summary possession action was brought by plaintiff-lessor against defendant-lessee for failure to make rental payments. *Id.* at 641–42. Plaintiff-lessor sought to recover possession of the disputed leased property. *Id.* at 641. The action was adjudicated in district and circuit courts in favor of plaintiff-lessor and was, ultimately, appealed by defendant-lessee to the territorial supreme court. *Id.* at 641–42. The defendant-lessee contended that district courts "shall not have cognizance of real actions nor actions in which the title to real estate shall come in question." *Id.* at 642–43. The court overruled the "exceptions" brought by the defendant-lessee. *Id.* at 646. Rule 15 of the territorial supreme court, entitled "Defense of Title in District Courts," and in effect at the time provided as follows:

> Whenever, *in the District Courts, in defense of* an action of trespass, or *a suit for the summary possession of land,* or any other action, the *defendant shall plead* to the jurisdiction in effect that the suit is a real action, or *one in which the title to real estate is involved, such plea shall not be received by the court, unless accompanied by an affidavit of the defendant, setting forth the source, nature and extent of the title claimed* by defendant to the land in question, and such further particulars as shall fully apprise the court of the nature of the defendant's claim.

*Id.* at 643 (emphases added). On its face, Rule 15 is substantially similar to HDCRCP Rule 12.1.

The territorial supreme court observed that "[t]he object of [Rule 15] was to prevent [defendants] from ousting the district court of jurisdiction in this class of cases by merely saying that the title to real estate would come in question and thereby depriving the [plaintiff] of the summary remedy given by the statute ... for obtaining possession of land[.]" *Id.* In light of the Moreses' similar insufficient showing under HDCRCP Rule 12.1, the district court, as indicated in *Kapiolani Estate*, cannot be ousted from jurisdiction.

The Moreses thus failed to adhere to the requirements set forth in HDCRCP Rule 12.1 and, therefore, did not properly interpose the defense of lack of subject matter jurisdiction.

## V.

Aames's argument that TCT No. 587,098 is conclusive and unimpeachable evidence as to title in any foreclosure proceeding is dispositive of the Moreses' second, third and fourth points insofar as those points are supported by discernible arguments.

### A.

■ Relying on HRS § 501–118 (Supp. 2001), Aames asserts that the Moreses "did not have the right or power ... to impeach the foreclosure proceeding" during the subsequent ejectment action because, *inter alia,* the Moreses' defenses against district court jurisdiction were raised in an untimely manner. According to Aames, the Moreses' defenses "should have been raised ... before the completion of the [foreclosure] sale, and certainly no later than the entry of the new certificate of title."

HRS chapter 501 pertains to "registration of title [with the Land Court] to land and easements or rights in land held and possessed in fee simple within the state of Hawaii." HRS § 501–1 (1993). The 1903 legislative history of HRS chapter 501 is sparse. However, the legislature indicated that Act 56, which established the statute, incorporated what is commonly known as the "Torrens Land Act." S. Com. Rep., in 1903 Senate Journal, at 337. According to the legislative history,

> [t]his Act is what is commonly known as the "Torrens Land Act," and has been adopted by many states of the United States, and is in use in the District of Columbia.

*It provides an economical and convenient manner of recording land titles,* which, when the plan is fully adopted by the people, will do away with the present cumbersome plan of records and largely reduce the expense of land transfers.

. . . .

The *plan proposed is such that under it land can be transferred with as great facility as shares of stock* are at the present time.

*Id.* (emphases added). The system of land title registration adopted by the Torrens Land Act and codified in HRS chapter 501 is "a system for registration of land under which, upon the landowner's application, the court may, after appropriate proceedings, direct the issuance of a certificate of title." *In re Campbell,* 66 Haw. 354, 358, 662 P.2d 206, 209 (1983). The purpose of this "registration system is to conclusively establish title to land through the issuance of a certificate of title." *GGS (HI), Inc. v. New York Diamond (In re 2003 Ala Wai Blvd.),* 85 Hawai'i 398, 405, 944 P.2d 1341, 1348 (App. 1997), *overruled on other grounds, Knauer v. Foote,* 101 Hawai'i 81, 85–89, 63 P.3d 389, 393–97 (2003).

HRS § 501–118, relied on by Aames, is entitled "Foreclosure," and states that

[m]ortgages of registered land may be foreclosed like mortgages of unregistered land.

In case of foreclosure by action, a certified copy of the final judgment of the court confirming the sale may be filed or recorded with the assistant registrar or the deputy after the time for appealing therefrom has expired and the purchaser shall thereupon be entitled to the entry of a new certificate.

In case of foreclosure by exercising the power of sale without a previous judgment, the affidavit required by chapter 667 shall be recorded with the assistant registrar. The purchaser or the purchaser's assigns at the foreclosure sale may thereupon at any time present the deed under the power of sale to the assistant registrar for recording and obtain a new certificate. *Nothing in this chapter shall be construed to prevent the mortgagor or other person*

*in interest from directly impeaching by action or otherwise, any foreclosure proceedings affecting registered land, prior to the entry of a new certificate of title.*

*After a new certificate of title has been entered, no judgment recovered on the mortgage note for any balance due thereon shall operate to open the foreclosure or affect the title to registered land.*

(Emphasis added.) The underscored language of HRS § 501–118 clearly recognizes a mortgagor's right to challenge a foreclosure proceeding, stating that "[n]othing . . . shall . . . prevent the mortgagor . . . from directly impeaching . . . any foreclosure proceedings." *Id.* However, the statute directs that such a right is to be exercised "prior to the entry of a new certificate of title." *Id.* Consistent with this proposition, HRS § 501–118 provides that "[a]fter a new certificate of title has been entered, no judgment recovered on the mortgage note for any balance due thereon shall operate to open the foreclosure or *affect the title to registered land.*" *Id.* (emphasis added). This indicates that conclusive effect is to be given the certificate of title on the question of title to land.

Accordingly, it may be surmised from the text of HRS § 501–118 that a mortgagor's right to "impeach[ ] . . . any foreclosure proceeding" is expressly limited to the period before entry of a new certificate of title. This proposition appears to be buttressed by HRS § 501–88 (1993), which provides that the matters stated in the certificate are to be given conclusive effect in the courts.

**Certificate as evidence.** The original certificate in the registration book, and any copy thereof duly certified under the signature of the registrar . . ., and the seal of the court, *shall be received as evidence in all the courts of the State and shall be conclusive as to all matters contained therein,* except as otherwise provided in this chapter.

(Emphasis added.) Such a construction of HRS § 501–118 would effectuate the legislature's intent that the recording system adopted be an "economical" and "convenient" method of "recording land titles" allowing transfer of titles to be completed with "great

facility" and ease. Sen. Com. Rep., in 1903 Senate Journal, at 337.

In 1998, Act 122, entitled "An Act Relating to Foreclosures," made amendments to HRS § 501–118 and additions to HRS chapter 667. 1998 Haw. Sess. L. Act 122, §§ 1 and 3, at 468, 477–78. HRS chapter 667 as titled, relates to "Mortgage Foreclosures." The purpose of Act 122 was to "establish an alternate nonjudicial foreclosure process." Conf. Com. Rep. No. 75, in 1998 House Journal, at 979. A new part to HRS chapter 667 was added, entitled "Alternate Power of Sale Foreclosure Process." 1998 Haw. Sess. L. Act 122, § 1, at 468. *See* HRS § 667–21 (Supp.1998) (defining "power of sale foreclosure" as "a nonjudicial foreclosure"). The legislature sought to "provide[ ] an alternate nonjudicial foreclosure process which reduces the time and cost of the current foreclosure process and contains additional safeguards not required in the current power of sale foreclosure law that are needed to protect the interests of consumers." Conf. Com. Rep. No. 75, in 1998 House Journal, at 979.

Concerns that such a measure would result in "taking away home ownership" were raised.[7] Comment by Representative Ward, in 1998 House Journal, at 766. In apparent response, the amendments made to HRS chapter 667 and HRS § 501–118, *inter alia,*

(7) Requir[ed] all financial institutions, mortgagees, lenders, business entities and organizations, and persons who intend to use this power of sale foreclosure process to *educate and inform* borrowers and mortgagors and develop informational materials;

(8) Restrict[ed] the use of the alternate nonjudicial power of sale foreclosure process to mortgages, loans, agreements, and contracts containing power of sale foreclosure language executed by the borrowers or mortgagors *after July 1, 1999;* and

(9) *Retain[ed] the original statutory language in [HRS § ] 501–118 ... which refers to the ability for the mortgagor to directly impeach any foreclosure proceeding affecting registered land, prior to the entry of a new certificate of title* [.]

Conf. Com. Rep. No. 75, in 1998 House Journal at 980 (emphases added). Items such as (7), by which mortgagees are required to "educate and inform" mortgagors, and item (8), where such measures were limited to mortgages executed after July 1, 1999, were seen as "additional safeguards not required in the [previous] power of sale foreclosure law ... needed to protect the interests of consumers." *Id.* at 979. However, the legislature decided, as announced in item (9), to "[r]etain[ ] the original statutory language" of HRS § 501–118. *Id.* at 980.

The legislative history of HRS § 501–118 confirms the textual command that defenses to mortgages foreclosed upon by exercise of the mortgagee's power of sale must be raised "prior to the entry of a new certificate of title." HRS § 501–118. The Moreses' objections contained in their August 30, 2001 joint declaration came after, and not prior to, the Land Court's issuance of TCT No. 587,-

---

7. Upon consideration of the passage of House Bill No. 2506 from the final reading stage by the House, Representative Ward voiced objection to House Bill No. 2506 and stated, in pertinent part, "I don't think [the House of Representatives] need[s] to facilitate in taking away home ownership.... What the downside [of this Bill] will be is that it's going to take home ownership away from people[.]" Comment by Representative Ward in 1998 House Journal, at 766.

Representative Thielen also voiced her opposition to House Bill No. 2506 and stated, in relevant part, as follows:

This bill .... sets up a process where the court is not involved, which means that a lender could foreclose upon a home without the court ever being involved in that process, and the court being able to provide a fair forum for the homeowner.

The rush to foreclose measure puts convenience above fairness and equity in foreclosure proceedings. Mr. Speaker, I'm not talking about lenders like the Bank of Hawaii or First Hawaiian Bank. I'm talking about more questionable lenders who are going to use this process to be able to take a person's home away from the family that has worked their whole lives to purchase that home.

....

Efficiency in the legal system, although an admirable objective, should not restrict access to the court and eliminate impartial resolution of mortgage disputes. This bill mainly compounds existing party inequities and streamlines the process of losing one's home in the name of the convenience for lenders.

Comment by Representative Thielen in 1998 House Journal, at 766.

098. Accordingly, title to the subject property in Aames became "conclusive and unimpeachable."

## B.

*In re Bishop Trust Co.*, 35 Haw. 816 (1941), on which Aames also relies, is consistent with the foregoing discussion. In that case, the original registered landowner was described on two transfer certificates of title as an unmarried man. *Id.* at 817–18. The landowner did not amend these certificates to reflect the fact that he had married. *Id.* at 818–19. This allegedly affected (1) the issuance of two trust deeds from himself to the appellee-buyer, and (2) the entry of three new certificates of title in favor of appellee-buyer. *Id.* The two trust deeds were executed on December 14, 1935. *Id.* at 818. Pursuant to these deeds, appellant "joined with her husband and released her claim to dower" in the disputed property. *Id.* Thus, appellee had knowledge of appellant *before* the issuance of the certificates. *Id.* Following the death of the landowner, a dispute arose between the appellee-buyer and appellant, the landowner's widow, as to whether appellant's dower right took priority over appellee's rights under the certificates. *Id.* at 820.

This court held that the appellee-buyer, as the later registered owner of the subject property, was entitled to possession because the new certificate of title was "conclusive" with regard to "all matters contained therein," *i.e.* that the registered landowner was "an unmarried man." *Id.* at 822. In pertinent part, the territorial supreme court noted:

*If, as we hold, a certificate of title is unimpeachable and conclusive except as otherwise provided by law, it would be illogical to say that it may be impeached if*

the purchaser for value had knowledge of an existing unregistered encumbrance. To do so would be to rob a certificate of title of its conclusive and unimpeachable character and place it in the same category as the ordinary record in the bureau of conveyances. If the intent and purpose of the law pertaining to the registration of land titles is to be preserved, the integrity of certificates of title must be scrupulously observed *and every subsequent purchaser of registered land who takes a certificate of title for value, except in cases of fraud to which he is a party, is entitled under the provisions of section 5041 to hold the same free from all encumbrances except those noted on the certificate and the statutory encumbrances enumerated.*

*Id.* at 825 (emphasis added).

## VI.

In their reply brief, the Moreses seemingly attempt to distinguish *In re Bishop Trust Co.* by citing to language in that case that qualifies the "conclusive and unimpeachable" nature of title in instances "otherwise provided by law" as "in cases of fraud," but only where "the rights of the purchaser for value and in good faith had [not] intervened."[8] *Id.* at 825–26.

Three types of fraud have been recognized in this jurisdiction in the mortgage context: (1) fraud in the factum, (2) fraud in the inducement, and (3) constructive fraud. *Honolulu Fed. Sav. & Loan Ass'n v. Murphy*, 7 Haw.App. 196, 201, 753 P.2d 807, 811 (1988). " 'Fraud in the factum is fraud which goes to the nature of the document itself.' " *Id.* at 201 n. 6, 753 P.2d at 811 n. 6 (quoting *Adair v. Hustace*, 64 Haw. 314, 320 n. 4, 640 P.2d 294, 299 n. 4 (1982)). " 'Fraud in the inducement is fraud which induces the trans-

---

**8.** The Moreses apparently rely on the language in *In re Bishop Trust, Co.* which states that

[i]n conclusion we might add that *nothing that we have said should be construed as intimating in any way the legal effect,* if any, *of the failure of the registered owner or other person in interest to effect an amendment of the existing certificates* registered in the name of [the prior landowner] upon the right of dower inchoate in [his wife] *had rights of the purchaser for value and in good faith not intervened* and [the prior

landowner] had died seized of the land in question. We are alone concerned with the legal effect of the failure by the parties concerned to effect such amendment in respect to the rights, under the statute, of a purchaser for value possessing actual notice of the creation of the relation of husband and wife subsequent to entry of the certificate of the registered owner.

*In re Bishop Trust Co.*, 35 Haw. at 826 (emphases added).

action by misrepresentation of motivating factors.'" *Id.* at 201, 753 P.2d at 811 (quoting *Adair,* 64 Haw. at 320 n. 4, 640 P.2d at 299 n. 4 (internal quotation marks and citation omitted)). "Constructive fraud is characterized by the breach of fiduciary or confidential relationship." *Id.* at 201 n. 6, 753 P.2d at 811 n. 6 (citing *Silva v. Bisbee,* 2 Haw.App. 188, 190, 628 P.2d 214, 216 (1981)). However, the Moreses do not provide a discernible factual or legal argument in support of their position that the case at bar involves any one of the three types of fraud mentioned. *See* Hawai'i Rules of Appellate Procedure Rule 28(b)(7) (2001) ("Points not argued may be deemed waived.")

As to the Moreses' assertion that Aames was not a "purchaser for value," this assertion is based on contentions that (1) Aames declared default, scheduled and auctioned off the property, filed a HRS § 667–5 affidavit,[9] and transferred title to itself without the Moreses' approval; and (2) Aames's counsel signed the "Commissioner's Deed" and con-

veyed the property to Aames as "Grantor" in contravention of Hawai'i Rules of Professional Conduct (HRPC) Rule 3.7(a) (2001). However, the Moreses do not indicate why Aames's actions, pursuant to HRS § 667–5 (1993), required their approval or make clear why Aames's actions contravene HRPC Rule 3.7(a). In any event, inasmuch as the Moreses have not set forth a legal basis for fraud, the question of whether Aames was a purchaser for value whose rights would be protected even where fraud had been perpetuated on the Moreses, does not arise.

Insofar as Aames is the registered owner of the Property as evidenced by TCT No. 587,098 and this title is conclusive and unimpeachable, *see* discussion *supra,* Aames was entitled to a writ of ejectment. *Carter v. Kaikainahaole,* 14 Haw. 515, 516 (1902) (explaining that "a complainant who has the title to and right of possession of certain land and from whom possession is unlawfully withheld by another" is entitled to "the ordinary remedy of law of an action of ejectment").[10]

---

9. HRS § 667–5 requires that "[t]he affidavit and copy of the notice [of non-judicial sale] shall be recorded and indexed by the registrar, in the manner provided in [HRS] chapter 501 or 502, as the case may be."

10. In light of the foregoing analysis, we need not address the Moreses' second, third, or fourth arguments. However, we observe as to the Moreses' second argument, that the Moreses' reliance on the cited case law to support the rule that "a loan default must be proven ... by admissible evidence before summary adjudication is permissible in all Hawaii trial courts" is misplaced. These cases are distinguishable inasmuch as (1) the cases do not concern real property and ejectment actions, *see Buck v. Miles,* 89 Hawai'i 244, 245–47, 971 P.2d 717, 718–20 (1999) (involving a medical malpractice claim); *Pac. Concrete Fed. Credit Union v. Kauanoe,* 62 Haw. 334, 335, 614 P.2d 936, 937 (1980) (resolving dispute over two commercial monetary loan transactions); *Fuller v. Pac. Med. Collections, Inc.,* 78 Hawai'i 213, 216–19, 891 P.2d 300, 303–06 (App.1995) (pertaining to allegedly unfair or deceptive collection practices by collection agencies); or (2) the cases involve real property and judicial foreclosure proceedings rather than non-judicial foreclosure proceedings, *see Hawai'i Cmty. Fed. Credit Union v. Keka,* 94 Hawai'i 213, 217–18, 11 P.3d 1, 5–6 (2000) (relating to foreclosure complaint filed by mortgagee and counterclaim filed by mortgagor alleging negligent misrepresentation, unfair and deceptive trade practices, TILA violations and emotion distress); *GE Capital Hawai'i, Inc. v. Yonenaka,* 96 Hawai'i

32, 35, 25 P.3d 807, 810 (App.2001) (involving dispute initiated by mortgagee's filing of a complaint against mortgagor followed by a cross-claim and third-party complaint filed by mortgagor against a guarantor on the mortgage); and *GE Capital Hawaii, Inc. v. Miguel,* 92 Hawai'i 236, 238, 990 P.2d 134, 136 (App.1999) (concerning complaint filed by mortgagee against mortgagor seeking foreclosure of disputed property).

As to the Moreses' third and fourth arguments, the legislative history to HRS § 501–118, mentioned previously, suggests that mortgagees are required to "educate and inform borrowers and mortgagors" about the "power of sale foreclosure process." Conf. Com. Rep. No. 75, in 1998 House Journal at 980. However, as previously stated, legislative history to HRS § 501–118 also indicates that a mortgagor must impeach a foreclosure proceeding *"prior* to the entry of a new certificate of title." *Id.* (emphasis added). Here, foreclosure of the Property occurred before the Moreses filed their joint declaration on August 30, 2001, asserting their claims of unenforceable "power of sale" clauses and their TILA claims. In their opening brief, the Moreses reiterate their arguments about Aames's failure to provide them with the "Notice of Right to Cancel" and quote a paragraph from *Semar v. Platte Valley Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 701–02 (9th Cir.1986), which references 15 U.S.C. § 1635(f). The Moreses do not specifically set forth any statutory provision, or explain how 15 U.S.C. § 1635(f), if applicable, affects title that has become conclusive and unimpeachable. Be-

## VII.

Based on the foregoing, we affirm the district court's October 11, 2001 order granting Aames a writ of possession and the October 24, 2001 order denying the Moreses' motion to dismiss filed on October 3, 2001.

cause the Moreses do not provide any discernible legal argument as to their contention that the court had no subject matter jurisdiction because the Moreses did not receive the requisite copies of the TILA "Notice of Right to Cancel," we do not address this contention further.